IN THE UNITED STATES FEDERAL DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
|     Plaintiff, | * | |
| | * | |
| vs. | * | CR. NO. 2:06cr122-MEF |
| | * | |
| KENDALL R. WATSON, ET. AL., | * | |
|     Defendants. | * | |

## MOTION TO SUPPRESS

COMES, James R. Cooper, Jr. who on behalf of his client Kendall Watson, does move this Court to Suppress certain items and statements and states in support thereof as follows:

1. Mr. Watson was indicted for being an ex-felon in possession of a firearm, carrying a pistol in the furtherance of drug trafficking and the possession of 5 grams of methamphetamine with the intent to distribute same.

2. The Indictment alleges as follows:

   a. that on or about November 16, 2006, Mr.Watson did knowingly possession a firearm after first being convicted of a felony.

   b. that on or about November 16, 2005, Mr. Watson did knowingly possession methamphetamine in the amount of 5 grams with the intent to distribute.

   c. that on November 16, 2005, Mr. Watson did knowingly possession a firearm in furtherance of drug trafficking.

3. The underlying circumstances for all three cases incurred on November 16, 2006 as follows:

   On November 16, 2005, at approximately 1:36 A.M.. Officer Magnus stopped a truck registered to Kendall and Earl Watson. He observed the truck leave from a closed business. He stopped the truck due to several burglaries in the area and three stolen Dodge Trucks.

   Based upon that single circumstance, the Police Officers stopped Mr. Watson. He was found to have a valid driver's license. He was found to be an ex-felon.

Officer Magus orally requested that Mr. Watson give him permission to search the truck. Officer Magus says Mr. Watson orally agreed to the search. Mr. Watson says he did not consent to the search under any circumstances.

As Mr. Watson exited the vehicle, the Officer said he saw a pistol. He entered the truck and found an air pistol. The Officer then told Mr. Watson to sign a form saying that they had given him his air gun back. In fact that form, cleverly folded was a Consent to Search. Mr. Watson did not know it was a Consent to Search form. He was told it was a receipt for his pistol. He was tricked into signing that form.

The officers searched the truck and found a real gun and the drugs. Thereafter they took several statements that were incriminating from the defendant.

4. The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975). Traffic stops qualify as seizures under the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979).

On the date identified above, Mr. Watson was seized by police officers and certain items taken from or near him. In addition to being physically seized, statements were taken from him as a direct result of his seizure and subsequent arrests.
5. The Supreme Court has identified at least three separate categories of police

citizen encounters in determining which level of Fourth Amendment scrutiny to apply: (1) brief, consensual and non-coercive interactions that do not require Fourth Amendment scrutiny, Florida v. Bostick, 501 U.S. 429 (1991); (2) legitimate and restrained investigative stops short of arrests to which limited Fourth Amendment scrutiny is applied, Terry v. Ohio, 392 U.S. 1 (1968); and (3) technical arrests, full-blown searches or custodial detentions that lead to a stricter form of Fourth Amendment scrutiny, Brown v. Illinois, 422 U.S. 590 (1975).

6. At issue in this case is the second type of encounter, commonly referred to as a Terry stop. Terry requires that an officer have an objective, reasonable suspicion of criminal activity. Pursuant to this standard, a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place," United States v. Purcell, 236 F. 3d 1277 ( 11th Cir. 2001 ) (citing Terry, 392 U.S. at 20)..., and may not last "any longer than necessary to process the traffic violation" unless there is articulable suspicion of other illegal activity. Id. ) .
7. Under the exclusionary rule, evidence obtained in an encounter that is in

violation of the Fourth Amendment, including the direct products of police misconduct and evidence derived from the illegal conduct, or "fruit of the poisonous tree," cannot be used in a criminal trial against the victim of the illegal

search and seizure. United States v. Terzado-Madruga, 897 F.2d 1099, 1112 (11th Cir. 1990). See also Weeks v. United States, 232 U.S. 383, 391-93 (1914).

8. In the case of United States v. Perkins, 348 F.3d 965 (11th Cir. 10/22/2003)] , the 11th Circuit upheld the District Court's suppression of evidence based upon a traffic stop. The Court ultimately held as follows:

"[33] As Colston testified, following issuance of the traffic citation to Perkins, he merely had a "hunch" based upon the totality of the circumstances that Perkins was lying to him about his destination. This "hunch" led him to initiate a new investigation of other criminal activity after the purpose of the traffic stop had ended. Thus, the continued detention of Perkins and Scott beyond the issuance of the traffic citation, during which Colston repeatedly asked if there were drugs in the car and called in a drug dog, was unlawful. Since Perkins' consent to the search of the car was the product of an unlawful detention, "the consent was tainted by the illegality and was ineffective to justify the search." Florida v. Royer, 460 U.S. 491, 507-08 (1983) (plurality opinion). Therefore, any statements made and evidence seized during the unlawful detention are to be excluded. Finally, we emphasize that "the fact that [Colston's] hunch ultimately turned out to be correct–i.e. that [Perkins and Scott] were illegally transporting [drugs] is irrelevant for purposes of the Fourth Amendment. To hold otherwise would open the door to patently illegal searches by government officials, who would attempt to justify the legality of their conduct after-the-fact." Pruitt, 174 F.3d at 1221 n.4.

[34] IV. CONCLUSION

[35] Based on the foregoing, we conclude that Colston's prolonged detention of

Perkins and Scott beyond the issuance of the traffic citation was unconstitutional. Colston's inference from the totality of the circumstances that he observed was merely an unparticularized hunch that failed to rise to the level of reasonable suspicion of other criminal activity. We thus AFFIRM the district court's grant of Perkins and Scott's motions to suppress. "

11. The initial seizure or stop in this case was not based on anything. It was a wild guess. There was no crime reported. The vehicle was not reported stolen. Mr. Watson had a valid driver's license. He was tricked into signing some form. The officer did not have probable cause to stop the truck. He had no reason to do so.

For the reasons cited Mr. Stephens requests the following relief:

1. That a hearing be conducted in that matter wherein the police officers involved be made to testify before this court and at the conclusion of which all items seized from the truck during the November 16, 2005, search and all statements he made after that stop be suppressed.

2. All other appropriate relief.

                        RESPECTFULLY SUBMITTED,

                        _____
                        s/James R. Cooper, Jr. (COO021)
                        COOPER & COOPER
                        Attorney for Defendant
                        312 Scott Street
                        Montgomery, AL 36104
                        (334) 262-4887

### CERTIFICATE OF SERVICE

      I hereby certify that on this the 7th day of July, 2006, I have served a copy of the foregoing Motion to Suppress upon Mr. Terry Moorer, Asst. U.S. Attorney, P.O. Box 197, Montgomery, Alabama 36101 and by electronic case filing, by placing a copy of same in the United States Mail properly addressed and postage prepaid.

                        _____
                        s/James R. Cooper, Jr.

cc:
Kendall Watson
Montgomery City Jail
P. O. Drawer 159
Montgomery, AL 36104